UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES STOCKMAN,

        Plaintiff,                        Hon. Ellen S. Carmody

v.

                                          Case No. 1:17-cv-1007

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on his alleged disability onset date. (PageID.158). Plaintiff successfully completed high school and worked previously as a stock clerk and industrial truck operator. (PageID.46). Plaintiff applied for benefits on July 31, 2014, alleging that he had been disabled since May 28, 2014, due to degenerative disc disease and bulging and protruding discs. (PageID.158-74, 202). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.77-156). On August 9, 2016, ALJ JoErin O'Leary conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.52-75). In a written decision dated September 7, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.36-47). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.26-30). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease; (2) headaches; (3) obesity; (4) chronic pain syndrome; (5) traumatic brain injury; (6) mood disorder; and (7) anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.38-41). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

capacity to perform light work subject to the following limitations: (1) during an 8-hour workday, he can stand and walk for four hours each; (2) he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps/stairs; (3) he can occasionally balance, stoop, kneel, crouch, and crawl; (4) he can never work around unprotected heights or moving mechanical parts; and (5) he is limited to simple, routine, repetitive tasks and making simple work-related decisions. (PageID.41).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 226,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.70-73). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.         **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing and other statements, the administrative record contained less than 200 pages of medical treatment records. The ALJ described this evidence as follows:

> The claimant has degenerative disc disease and headaches, but these conditions are not disabling. The claimant's symptom severity is inconsistent with the diagnostic imaging results. Treatment providers conducted imaging studies of the claimant's cervical spine approximately 18 days after the claimant's motor vehicle accident. These studies indicated that the claimant had a small central disc protrusion with mild central canal stenosis and no neuroforaminal narrowing at C4- C5, a moderate disc bulge with moderate to severe central canal stenosis at C5-C6, and a broad- based disc bulge with no central canal stenosis at C6-C7 (2F/2). The claimant also had a disk herniation in his lumbar spine at L5-S1; this was an exacerbation of a disk herniation present since 2010 (2F/7). Imaging studies from July 2014 revealed mild stenosis in the thoracic spine T10-T11 and early stenosis and modest for mineral narrowing at C4-C5 and C5-C6 (5F/1).
>
> Though diagnostic imaging results confirm the presence of a severe impairment, the claimant's condition has improved with relatively conservative treatment modalities. In June 2014, the claimant presented for treatment with complaints of back pain. Treatment providers gave the claimant Decadron, Toradol, and Norco; treatment providers noted that the claimant experienced good symptomatic relief(1F/2). They gave the claimant a work release form, and discharged him with instructions to follow with his primary care provider (1F/2). Though trigger point injections did not help, physical therapy, ice, rest, medication, and use of the TENS unit reduced the claimant's pain. He denied numbness or tingling (11F/8).

In June 2014, treatment providers referred the claimant to the Rehabilitation Department of Spectrum Health. They ordered the claimant to attend 4 weeks of physical therapy twice a week. The claimant received cervical/lumbar traction, mobilization manual therapy, postural instruction, McKinzie exercises, and aerobic conditioning (2F/8). On June 6, 2014, treatment providers noted that the claimant required increase[d] time to complete his therapeutic exercises. However, on June 13, 2014, treatment providers noted that the claimant was able to perform all therapeutic exercises without difficulty [and] no complaints of increased pain during or after his treatment session (2F/13). The claimant reported that he could possibly start back to work (2F/13). Treatment providers discharged the claimant on June 18, 2014, stating that the claimant tolerated all their possessions (sic) well with minimal to no difficulties in performing the therapeutic exercises and progressions. Providers further stated that the patient demonstrated the ability to perform his exercises [at] home safely to continue to improve his ability to lower his pain levels (2F/16). In July 2016, the claimant stated that Topamax helped with his headaches (11F/1).

In addition, the claimant's physical examinations and activities of daily living are inconsistent with his claims of disability. In May 2014, the claimant presented to West Shore Medical Center for emergency treatment with complaints of back pain (1F/1). Upon examination, the claimant exhibited pain on palpation paraspinally. However, there was no midline spinal process tenderness or step off. The claimant's straight leg raise examinations were negative. The claimant has strong equal pulses, full strength in his bilateral lower extremities, and sensation grossly in multiple dermatomes (1F/2).

In June 2014, treatment providers noted that while the claimant did have some decreased range of motion. However, treatment providers also noted that he was able to look to either side without difficulty, while experiencing some discomfort. He can will (sic) all extremities with no focal weakness furthermore, while the claimant complained of significant pain and spasm in his back when he went from sitting to laying down, [his] providers do not feel any palpable spasm of the lumbar thoracic spine (4F/3). They decided that the claimant should continue to remain off work until June 23, 2014; they continued him on the same pain medication regimen (4F/3). In June 2014, the claimant stated that he returned to work after his April 2014 accident; he was bending 75 to 150 times a night, squatting, and picking up steel during this time (2F/8). The claimant remarked in November 2015 that his pain was mainly in his head and neck. In July 2014, the claimant exhibited mild cervical and

lumbar myofascial tenderness, and is straight leg raising test with mild positive on the right. However, claimant's straight leg raising test was negative on the left and he had a negative Spurling's test. Furthermore, the claimant had normal strength and tone in his upper and lower extremities, and symmetrical deep tendon reflexes (5F/1). As late as November 2015, the claimant has also shown normal gait and balance (5F/1; 10F/2).

The claimant is six feet and one inch tall and has weight ranging from 265.4 to 270 pounds for a Body Mass Index between 35 and 35.6 (8F/1; 10F/2). The claimant is clinically obese. I have considered how weight affects the claimant's ability to perform routine movement and necessary physical activity within the work environment. I am aware that obesity is a risk factor that increases an individual's chances of developing impairments in most body symptoms. Obesity can cause limitation of function and the effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I have. . . considered any added or accumulative effects the claimant's obesity played on the claimant's ability to function, and to perform routine movement and necessary physical activity within the work environment. Based on the impact of these impairments, the claimant can perform light work except he can stand for 4 hours and walk for four hours in an 8-hour workday. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He can never work around unprotected heights or moving mechanical parts.

The claimant has chronic pain syndrome, a traumatic brain injury, a mood disorder, and anxiety, but these conditions are not disabling. The claimant has been depressed and displayed a flat affect. However, from December 2014 through May 2016, the claimant's psychiatric examination was unremarkable routinely unremarkable. He showed no psychomotor, mood, affect, speech, or thought impairments (11F). The claimant has received no psychiatric medication, counseling, or therapy. Chronic pain appears to exacerbate his mental condition (11F/2). Based on these impairments, he is limited to performing simple routine repetitive tasks and making simple work related decisions.

(PageID.42-44).

**II.       The ALJ Properly Assessed the Medical Opinion Evidence**

On July 27, 2016, Dr. Karen Meyer provided a sworn statement in response to questioning by Plaintiff's counsel. (PageID.424-33). Dr. Meyer stated that she began treating Plaintiff in December 2014. (PageID.425). The doctor did not articulate any specific functional limitations applicable to Plaintiff, but instead simply asserted that Plaintiff was unable to return to work because he would be "off-task" "probably about 50 percent" of the time and would be absent more than two days monthly. (PageID.424-33). The ALJ afforded Dr. Meyer's opinions "little weight." (PageID.45). Plaintiff argues that he is entitled to relief because the ALJ failed to afford controlling weight to the opinion of his treating physician. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*,

9

1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d

1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

First, to the extent Dr. Meyer simply asserted that Plaintiff was unable to work, such is entitled to no deference as such is a matter expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). To the extent that Dr. Meyer offered observations that constitute a "medical opinion," *see* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2),[2] the ALJ discounted such on the ground that they were "inconsistent with [Plaintiff's] physical examination findings, objective medical evidence, and [Plaintiff's] daily activities." (PageID.45). This determination is supported by substantial evidence.

As the ALJ observed, Plaintiff has been treated with conservative measures. (PageID.248-49, 255-57, 272-81, 317-18). Such treatment is inconsistent with Dr. Meyer's opinion that Plaintiff is incapable of working. *See, e.g., Myatt v. Commissioner of Social Security*, 251 Fed. Appx. 332, 335 (6th Cir., Oct. 16, 2007) (a claimant's "modest treatment regimen. . .is inconsistent with a diagnosis of total disability"). Dr. Meyer's treatment notes are inconsistent with her subsequent sworn statement. (PageID.380-423). A neurosurgeon who examined Plaintiff recommended conservative treatment. (PageID.317-18). Another physician who examined Plaintiff concluded that Plaintiff could perform light work in which he "regularly" lifted "up to 20 pounds." (PageID.442-46). The ALJ recognized that Plaintiff experiences several severe impairments which impose significant functional limitations. Such are adequately accounted for in the ALJ's RFC assessment which has not been challenged by Plaintiff. Dr.

---

[2] These provisions define a medical opinion as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

11

Meyer's opinion that Plaintiff is far more limited was discounted by the ALJ for reasons that were clearly articulated and supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: September 26, 2018  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge